**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **KRIEG E. SIBILLE** | § | |
| | § | |
| **Plaintiff** | § | |
| **v.** | § | **CASE NO. 4:20-cv-01744** |
| | § | |
| **RUBRIK, INC.** | § | |
| | § | |
| **Defendant.** | § | |

---

### PLAINTIFF'S SECOND AMENDED COMPLAINT

---

**TO THE HONORABLE JUDGE OF SAID COURT:**

Plaintiff, Krieg E. Sibille (hereinafter "Plaintiff"), files this Second Amended Complaint complaining of and about Defendant, Rubrik, Inc. ("Defendant") and for cause of action would show the following:

### I. PARTIES

1.      Plaintiff, Krieg Sibille, is a citizen of the United States and the State of Texas and resides in Sugarland, Fort Bend County, Texas.

2.      Defendant Rubrik, Inc. is a for-profit foreign corporation registered in the State of Texas that provides goods and services within the State of Texas on a continuous, regular basis. Defendant's principal place of business located in Palo Alto, Santa Clara County, California. Plaintiff has served Defendant's registered agent C T Corporation System at 1999 Bryan St. Suite 900, Dallas, TX 75201-3136 USA via Certified Mail – Return receipt requested.

### II. JURISDICTION AND VENUE

3.      This court has jurisdiction pursuant to 28 U.S.C.§ 1332 based on diversity of

*Plaintiff's Second Amended Complaint*

citizenship, as the Plaintiff and Defendant are citizens of different states and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.  The causes of action in this matter are brought under Texas Labor Code § 21.051 and 21.055, for which this court has concurrent jurisdiction to hear the matter in controversy.

4.      Moreover, venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this federal district.

### III.      NATURE OF THE ACTION

5.      This is an action against Defendant for violations of the Americans with Disabilities Act of 1990, as amended ("ADAAA"), 42 U.S.C. §§ 12101, et seq.  Specifically, Plaintiff complains that Defendant discriminated against him on the basis of his disability (Crohn's Disease), and subsequently retaliated against him after engaging in a protected activity by terminating his employment in violation of the ADAAA.

### IV.      PROCEDURAL REQUIREMENTS

6.      On May 8, 2019, Plaintiff filed a charge of disability discrimination and retaliation with the U.S. Equal Employment Opportunity Commission  ("EEOC") (Charge No. 460-2019-03979). On February 4, 2020, Plaintiff was issued his right to sue. Plaintiff filed this lawsuit within ninety (90) days of receiving his Notice of Right to Sue.

### V.      FACTS

7.      Plaintiff was hired by Defendant on October 30, 2017 as an account executive in the Houston regional sales area.  He performed his work primarily out of his home in Sugarland, Texas and within the region.  Plaintiff performed well in his early employment, receiving awards and a promotion within months to Enterprise Account Manager.  However, the work environment

*Plaintiff's Second Amended Complaint*

was began to grow increasingly stressful and frustrating in February 2018, due to organizational issues caused by Plaintiff's superiors John Elliott and David Young, as he was not allowed to move into his new promoted position, given that he was receiving direction on the new position from Marty Sanders while having to report to and follow opposing directions from Mr. Elliott. The hold-up was occurring because they claimed they needed to hire more sales staff first. Therefore, Plaintiff was required and expected to perform the duties of both his current and new positions, and Plaintiff expressed the operational issues to Mr. Elliott throughout the month.

8.     As the stress and frustration grew for Plaintiff, he began to experience a reoccurrence of an existing disability he had prior to his employment with Defendant, specifically Crohn's Disease. As this worsened, Plaintiff made an appointment and visited with his physician. His physician advised him to inform his manager of his condition, in an attempt to dialogue on the work environment's effect on his conditions and managing the stress, so that Plaintiff would not end up in the hospital again. With what continued to occur thereafter, Plaintiff had continuing visits with his physician throughout 2018.

9.     On March 7, 2018, Plaintiff called Mr. Elliott and informed him of his Crohn's Disease, and the symptoms he had been experiencing based on the issues at work. Plaintiff also told Mr. Elliott about the medications he takes and the importance of finding improvements in the work, expectations and communications to reduce stress. Thereafter, the issues did not improve, but in fact worsened. Throughout March 2018, Plaintiff's complaints fell on deaf ears. When Plaintiff brought up the issues to Mr. Elliott's superior, Mr. Young, he was in shock of the extent of Plaintiff's condition and treatment. Mr. Young expressed understanding of the situation, and said he wanted to help. This lead to an e-mail on April 2, 2018 from Mr. Young to Mr. Elliott's team "raising" the issue of the need to follow company policies and guidelines, with such attached,

*Plaintiff's Second Amended Complaint*

and the statement the consequence of any violations would be TERMINATION (*typed in capital letters for emphasis to him*.).   Plaintiff was unclear if this was a threat toward him, or was in assistance of Plaintiff when he raised his issues to Mr. Young, given Mr. Young seemed sympathetic.

10.     In the months following April 2nd, Plaintiff was denied a long list of resources, support, assistance and opportunities for earning pay he normally would have received in the Enterprise Account Manager position, thus treating him less favorably than other non-disabled employees and in retaliation for his raising and complaints about his disabling conditions.  Further, Mr. Elliott cancelled a normal meeting with Plaintiff, when he learned that Plaintiff was having a flare up in his Crohn's Disease and wanted to drive, instead of fly, to the meeting.  During this time, Plaintiff made complaints to many others in his region about the effect Mr. Elliott's actions were having on his ability to perform his job fully and earn full compensation.

11.     Finally, Mr. Elliott became very upset and heated in his conversation with Plaintiff on September 4, 2018, when Plaintiff informed Mr. Elliott he could not go into Defendant's shared co-working office in Houston that particular day, as Plaintiff told him he was experiencing severe issues with his Crohn's disease, including running a fever.  Directly thereafter, on September 6th, Mr. Elliott placed Plaintiff on a Performance Improvement Plan.  Plaintiff, in shock, asked why he was being placed on a PIP, especially when he had just closed on the largest transaction and customer in the region two weeks earlier.   Mr. Elliott simply said he needed to work on his performance and refused to put anyone from Human Resources on the call.  Further, he denied it was because of his irritation on the call two days earlier, and began to read off a laundry list of false alleged performance issues.  Plaintiff not only tried to get Human Resources involved during the September 6th PIP meeting, but also during the heated discussion by Mr. Elliott on September

*Plaintiff's Second Amended Complaint*

4th.

12.     Plaintiff met with Allison Davis from Human Resources about his PIP on September 14, 2018, discussing in full Mr. Elliott's actions, his Crohn's disease and the problems with the PIP, especially in contrast to his verifiable performance and awards.  Ms. Davis confirmed to Plaintiff that she had been aware of Plaintiff's medical appointments.  It was clear Ms. Davis was either completely unaware of Plaintiff and his job, or she simply was being tight lipped in towing the company line, as she provided no response or understanding on any of the items raised. Further, she had been aware of the problems with Mr. Elliott that occurred earlier in September, because Plaintiff sent her an e-mail on the interactions on September 7th.  She waited a week to even setup the call to address with Plaintiff.

13.     In late September and early October 2018, Mr. Elliott continued to be unsupportive of Plaintiff during his 30 day PIP period, missing most of the weekly review calls scheduled. However, Plaintiff continued to perform, staying in contact with Ms. Davis and sending her hard data showing he was meeting or exceeding all expectations.  She did not respond nor provide any support.  In fact, Mr. Elliott had to admit on a call with Plaintiff and Ms. Davis on October 1st that Plaintiff had met the PIP requirements.  It didn't matter though, as it was clear that Mr. Elliott, and ultimately Defendant, had made up their collective minds about Plaintiff.

14.     Plaintiff continued to try to meet with Ms. Davis, although her schedule presented challenges to setting meetings, for which she apologized.  Plaintiff even took snapshots of Ms. Davis' full calendar and e-mailed to her asking when she could fit him in during October.  He finally e-mailed her on October 30th complaining about the lack of feedback from her and Mr. Elliott.  A second PIP review was then set for the following day, October 31st, where Mr. Elliott

*Plaintiff's Second Amended Complaint*

again mentioned on the call with Ms. Davis that Plaintiff was meeting his PIP. However, no other information, feedback, nor requirements to support and advance Plaintiff in his job were offered through the time of his termination.

15.     On November 9, 2018, Plaintiff received a call from a counterpart at another company in the industry stating that he heard Plaintiff would be terminated the following week, and Mr. Elliot was a "dead man walking" at the company. Right on cue, Plaintiff was terminated on November 12, 2018 by Mr. Elliott and Ms. Davis for non-compliance with PIP requirement, without explanation. It is Plaintiff's position that Defendant, through the conduct of his direct superiors and managers, was discriminated against based on his disability (Crohn's Disease) and he suffered retaliation after he complained.

## VI.  CAUSES OF ACTION

### COUNT NO. 1 – DISCRIMINATION BASED DISABILITIES

16.     Plaintiff incorporates by reference the allegations contained in paragraphs 1-15 above, as though fully stated herein.

17.     Based upon the allegations set forth above, Plaintiff asserts that he suffered discrimination and was terminated, in whole or in substantial part, due to his disabilities under Texas Labor Code Sec. 21.051. More specifically, Plaintiff is: (1) disabled, (2) qualified for his position, (3) suffered an adverse employment action, and (4) treated less favorably due to his disabilities, and/or the decision to terminate him was based upon disabilities.

### COUNT NO. 2 – RETALIATION

18.     Plaintiff incorporates by reference the allegations contained in paragraphs 1-15 above, as though fully stated herein.

*Plaintiff's Second Amended Complaint*

19.     Based upon the allegations set forth above, Plaintiff asserts that he suffered retaliation in his employment with Defendant due to his complaints of his disabilities under Texas Labor Code Sec. 21.055.   More specifically, Plaintiff: (1) made complaints to Defendant about and to his managers and human resources, about the manager's conduct and treatment of Plaintiff; (2) suffered an adverse employment action (termination); and (3) his termination was due to such protected complaints.

## VII. DAMAGES

20.     Plaintiff has sustained damages as a result of Defendant's actions described herein. Accordingly, Plaintiff is entitled to an award of actual and compensatory damages in an amount that exceeds the minimum jurisdictional limits of this Court, including, but not limited to: mental anguish and emotional pain and suffering in the past and future; impairment of reputation, personal humiliation; lost wages and benefits in the past and future; together with pre-judgment and post-judgment interest as allowed by law.

21.     Additionally, as a result of Defendant's above-described actions and/or omissions, Plaintiff was required to retain counsel.   Accordingly, Plaintiff also seeks compensation for attorney's fees, as well as out-of-pocket expenses and costs.

## VIII. JURY DEMAND

22.     Plaintiff demands a jury on all issues to be tried in this matter and herein submits the jury fee.

## IX. PRAYER

For the reasons set forth above, Plaintiff, Krieg Sibille, respectfully prays that the Defendant be cited to appear and answer herein, and for the following relief:

*Plaintiff's Second Amended Complaint*

a.   a judgment in Plaintiffs favor on all claims asserted in this complaint;

b.   past and future wages;

c.   lost employment benefits;

d.   compensatory damages;

e.   pre-judgment and post-judgment interest as permitted by law;

f.   reasonable attorney's fees and costs; and

g.   for such other and further relief to which Plaintiffs may show himself to be justly entitled.

Respectfully submitted,

kennard law P.C.

By: _____
Alfonso Kennard, Jr.
Texas Bar No. 24036888
alfonso.kennard@kennardlaw.com
2603 Augusta Dr., Ste. 1450
Houston, Texas 77057
(713) 742-0900 (main)
(713) 742-0951 (facsimile)
**ATTORNEY FOR PLAINTIFF**

*Plaintiff's Second Amended Complaint*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of June 2020, a true and correct copy of the foregoing instrument was e-filed with the court and served on all counsel of record by using the Court's CM/ECF system:

Robert J. Carty Jr.
John P. Phillips
Seyfarth Shaw LLP
700 Milam St., Suite #1400
Houston, Texas 77002-2812
rcarty@seyfarth.com
jphillips@seyfarth.com

_____
Alfonso Kennard, Jr.

*Plaintiff's Second Amended Complaint*